**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JMB Shipping ATB 284, LLC,<br>JMB Shipping ATB 220, LLC,<br>JMB Shipping ATB 205, LLC,<br><br>                                   Petitioners,<br><br>vs.<br><br>Unico Marine Services, LLC,<br><br><br>                                   Respondent. | Case No. 1:22-mc-00067<br><br><br>**VERIFIED PETITION FOR *EX PARTE* ORDER OF ATTACHMENT IN AID OF ARBITRATION** |

Petitioners JMB Shipping ATB 284, LLC ("JMB 284"); JMB Shipping ATB 220, LLC ("JMB 220"); and JMB Shipping ATB 205, LLC ("JMB 205," and collectively with JMB 284 and JMB 220, "JMB Shipping" or "Petitioners"), by and through their attorneys Lowenstein Sandler LLP, allege as and for their Petition against Respondent Unico Marine Services, LLC ("Unico Marine") as follows:

## NATURE OF THE ACTION

1.  Petitioners seek an order of attachment without notice pursuant to New York CPLR § 7502(c) and Article 62, incorporated by Federal Rule of Civil Procedure 64, in aid of an arbitration pending before the Society of Maritime Arbitrators in New York County (the "Arbitration").

2.  The Arbitration arises from Respondent Unico Marine's unlawful breach of a contract and its tortious misuse of Petitioners' shipping vessels.

3.      Unico Marine agreed in May 2021 to charter Petitioners' vessels in exchange for paying Petitioners approximately $20,000 per day for the term of the contracts.   Yet, by October 2021, Unico Marine had stopped making any payments and, to date, refuses to pay the amounts due under the parties' contracts.

4.      Furthermore, after assuming control of JMB Shipping's vessels, Unico Marine incurred several debts to creditors who have placed liens on JMB Shipping's vessels to secure those debts.   JMB Shipping has paid millions of dollars to clear these liens.

5.      In addition to wrongfully encumbering JMB Shipping's vessels with millions of dollars in liens, Unico Marine is secretly and wrongfully trying to persuade the parties' creditors to reallocate what little payment Unico Marine had already made toward clearing those liens. Unico Marine is asking the parties' creditors to refund past payments made toward clearing liens on JMB Shipping's vessels, and to instead apply those sums toward paying down liens on Unico Marine's own vessel.

6.      These claims have been submitted to the Arbitration pending before the Society of Maritime Arbitrators in the County of New York, as required by the parties' contracts.   Each party has appointed arbitrators and the panel has been fully formed.   The initial hearing in the matter is scheduled to be held on March 4, 2022.

7.      JMB Shipping has posted a bond of approximately $14 million to secure Unico Marine's claims, but has received not security for its own claims.  To the contrary, Unico Marine is aggressively trying to liquate its assets and wind up its business in a bad faith effort to render JMB Shipping's potential arbitration award illusory.  As described below, the evidence is that Unico Marine is taking steps to render an arbitration award ineffectual by secreting assets that would otherwise be available to help satisfy an award in Petitioners' favor.  The brashness of Unico

Marine's acts designed to shield its assets from execution underscores Petitioners' concerns and gives rise to their need for provisional relief on an *ex parte* basis.

8.      Petitioners thus bring this action to obtain an order of attachment of the M/V TERESA, barge ACADIA, and/or any other property of Unico Marine found within the Southern District of New York up to the amount of four million dollars, to secure its claims for Unico Marine's breach of contract and its wrongful, reckless, and fraudulent misuse of JMB Shipping's vessels.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction under 28 U.S.C. § 1333(1), as this is a civil case of admiralty or maritime jurisdiction.

10.      Venue is proper under CPLR § 7502(a)(ii), and 28 U.S.C. § 1391(b)(2) because the property at issue is situated within this district.

## PARTIES

11.      Petitioner JMB 284 was and is at all material times a limited liability company organized and operating pursuant to the laws of the State of Delaware, with a principal business location at 205 South Martel Avenue, Los Angeles, California 90036.   JMB 284 was and is at all material times the registered owner of the M/V RUBIA[1] and Barge UMS 284[2] (collectively, the "RUBIA Vessel").

---

[1]      The M/V RUBIA was and is at all material times a pusher tug of 434 gross tons bearing Official No. 1251312 and sailing under the flag of the United States.

[2]      Barge UMS 284 was and is at all material times a clean oil capable barge.   The M/V RUBIA and UMS 284 are designed and intended to be mated together to form an articulated tug and barge unit.

12.     Petitioner JMB 220 was and is at all material times a company organized and operating pursuant to the laws of the State of Delaware, with a principal business location at 205 South Martel Avenue, Los Angeles, California 90036.   JMB 220 was and is at all material times the registered owner of the M/V MORENA[3] and Barge UMS 220[4] (collectively, the "MORENA Vessel").

13.     Petitioner JMB 205 was and is at all material times a company organized and operating pursuant to the laws of the State of Delaware, with a principal business location at 205 South Martel Avenue, Los Angeles, California 90036.   JMB 205 was and is at all material times the registered owner of the M/V BELLA[5] and Barge UMS 205[6] (collectively, the "BELLA Vessel," or, collectively with the RUBIA Vessel and the MORENA Vessel, the "Vessels").

14.     Respondent Unico Marine was and is at all material times a limited liability company organized and operating pursuant to the laws of the State of Texas with a principal business location at 3773 Richmond Avenue, Suite 565, Houston, Texas 77046.

---

[3]     The M/V MORENA was and is at all material times a pusher tug of 713 gross tons bearing Official No. 9794680 and sailing under the flag of the United States.

[4]     Barge UMS 220 was and is at all material times a clean oil capable barge.  The M/V MORENA and UMS 220 are designed and intended to be mated together to form an articulated tug and barge unit.

[5]     The M/V BELLA was and is at all material times a pusher tug of 687 gross tons bearing Official No. 9405394 and sailing under the flag of the United States.

[6]     Barge UMS 205 was and is at all material times a clean oil capable barge approximately. The M/V BELLA and UMS 205 are designed and intended to be mated together to form an articulated tug and barge unit.

## STATEMENT OF FACTS

15.     In May 2021, Unico Marine executed three contracts to charter three of JMB Shipping's Vessels.

### A.  Unico Marine Executes and Breaches The RUBIA Agreement.

16.     On or about May 5, 2021, Unico Marine entered into a Bareboat Charter Agreement ("RUBIA Agreement") wherein Unico Marine agreed to charter the RUBIA Vessel.  *See* Ex. 1, RUBIA Agreement.

17.     Under the RUBIA Agreement, Unico Marine agreed to bareboat or demise charter the RUBIA Vessel in exchange for monthly charter hire of $9,500.00 per calendar day or part thereof for the Agreement's initial Term of six (6) months, ending on December 31, 2021.  *See* Ex. 1, Cl. 6.  The RUBIA Agreement provides that charter hire is "payable monthly in advance on the first day of each month, or if the 1st falls on a non-banking day, the last banking day of the previous month, by CHARTERER to OWNERS."

18.     Unico Marine failed to pay charter hire for the RUBIA Vessel for the month of October when hire came due on September 30, 2021.

19.     After the close of banks on October 1, 2021, JMB Shipping placed Unico Marine on notice that it was in breach of the governing Agreement due to its failure to timely pay charter hire.  *See* Ex. 2, Notice of Non-Payment.

20.     On October 4, 2021, Unico Marine informed JMB Shipping that it intended to breach the Agreement the following day by ceasing performance as charterer and redelivering the RUBIA Vessel the following day, October 5, 2021.  *See* Ex. 3, Notice of Redelivery.  Unico Marine proceeded to "redeliver" the RUBIA Vessel on or about October 7, 2021, by effectively abandoning the RUBIA Vessel and their crew at a dock in New Jersey.   In the interest of

preserving the RUBIA Vessel and ensuring that crew necessary for her safekeeping remain onboard despite Unico Marine's breach and abandonment, JMB Shipping retook possession of the RUBIA Vessel under protest.

**B. Unico Marine Executes and Breaches The MORENA Agreement.**

21.     On or about May 12, 2021, Unico Marine entered into a Bareboat Charter Agreement ("MORENA Agreement") wherein Unico Marine agreed to bareboat charter the MORENA Vessel in exchange for monthly charter hire of $6,500.00 per calendar day or part thereof for the Agreement's initial Term of six (6) months, ending on November 30, 2021. *See* Ex. 4, MORENA Agreement, Cl. 6.    The Agreement provides that charter hire is "payable monthly in advance on the first day of each month, or if the 1st falls on a non-banking day, the last banking day of the previous month, by CHARTERERS to OWNERS." *Id.*

22.     In breach of its obligations under the MORENA Agreement, Unico Marine failed to pay charter hire due for the 220 Unit on October 1, 2021, and failed to cure that breach within three (3) days as permitted under the 220 Agreement.

23.     In addition, Clause 10 of the MORENA Agreement provides that "[d]uring the term of this AGREEMENT, CHARTERER, at its sole cost and expenses, shall maintain, service, repair and preserve the VESSEL and its equipment in accordance with good commercial maintenance practices, in compliance with any currently existing and currently required Class, Flag, or U.S. Coast Guard or other U.S. governmental authorities, or other Port State Control requirements, and in substantially the same condition as when received from the OWNER, ordinary wear and tear excepted."

24.     Unico Marine breached Clause 10 of the MORENA Agreement by failing to maintain the MORENA Vessel and failing to conduct necessary repairs.  As a result of Unico Marine's breach of Clause 10, JMB 220 has incurred damages in the present amount of $214,398.

25.     In addition, Clause 20 of the MORENA Agreement provides that "[i]f CHARTERER shall fail to pay any charter hire due for more than three (3) banking days after the due date thereof (subject to notice and cure period), or if CHARTERER shall fail to perform or comply with any other material provision of this AGREEMENT . . . OWNERS may retake possession of the VESSEL, wherever found, without prior demand and without legal process."

26.     As a result of Unico Marine's breaches of the MORENA Agreement, on or about October 8, 2021, JMB 220 caused the arrest of the MORENA Vessel pursuant to Admiralty Rule D in the Middle District of Florida to retake possession of the MORENA Vessel.  Rather than surrender possession as required by Clause 20 of the MORENA Agreement, Unico Marine opposed JMB 220's effort to retake possession of the MORENA Vessel, resulting in a lengthy delay during which the MORENA Vessel remained under *custodia legis* in Florida.

27.     In addition, as a result of Unico Marine's breach of the MORENA Agreement, JMB 220 lost future charter hire for the months of November and December, 2021, while it sought substitute charter arrangements to mitigate its damages.   JMB 220 incurred damages of $361,328 for lost charter hire caused by Unico Marine's breaches.

28.     JMB 220 incurred attorneys' fees and reasonable costs of mitigation of damages in the amount of $106,419 as a result of Unico Marine's breach of the MORENA Agreement.

29.     In sum, taking into account a credit due to Unico Marine $70,549 for fuel, lube oils, and spare parts and equipment onboard the MORENA Vessel at the time of JMB 220's retaking

of possession, JMB 220's net damages arising out of Unico Marine's breach of the MORENA Agreement are in the present amount of $1,031,117.

**C. Unico Marine Executes and Breaches The BELLA Agreement.**

30.     On or about May 5, 2021, Unico Marine entered into a Bareboat Charter Agreement ("BELLA Agreement," or, collectively with the RUBIA Agreement and the MORENA Agreement, the "Charter Agreements") wherein Unico Marine agreed to bareboat or demise charter the BELLA Vessel in exchange for monthly charter hire of $8,600.00 per calendar day or part thereof for the Agreement's initial Term of six (6) months, ending on December 31, 2021. *See* Ex. 5, BELLA Agreement, Cl. 6.  The Agreement provides that charter hire is "payable monthly in advance on the first day of each month, or if the 1st falls on a non-banking day, the last banking day of the previous month, by CHARTERERS to OWNERS." *Id.*

31.     Per the terms of the BELLA Agreement, JMB 205 issued an invoice to Unico Marine on September 23, 2021 (Invoice No. 3) in the amount of $259,935.  *See* Ex. 6, Invoice No. 3.

32.     Unico Marine did not make any payment to JMB Shipping for Invoice No. 3 by October 1, 2021, nor in the three day cure period allowed under the BELLA Agreement.  Unico Marine's failure to timely pay charter hire constitutes a material breach of the BELLA Agreement.

33.     In addition, Clause 10 of the BELLA Agreement provides that "[d]uring the term of this AGREEMENT, CHARTERER, at its sole cost and expenses, shall maintain, service, repair and preserve the VESSEL and its equipment in accordance with good commercial maintenance practices, in compliance with any currently existing and currently required Class, Flag, or U.S. Coast Guard or other U.S.  governmental authorities, or other Port State Control requirements, and

in substantially the same condition as when received from the OWNER, ordinary wear and tear excepted."

34.     Unico Marine breached Clause 10 of the BELLA Agreement by failing to maintain the vessel and failing to conduct necessary repairs.  As a result of Unico Marine's breach of Clause 10, JMB 205 has incurred damages in the present amount of $340,641.

35.     In addition, Clause 19 of the BELLA Agreement provides: "Neither CHARTERER nor any other person shall have the right, power or authority to create, incur or permit to be placed or imposed upon the VESSEL any lien or encumbrance whatsoever." Clause 15 of the BELLA Agreement then provides, in relevant part: "CHARTERER shall fully protect OWNERS against he consequences of the CHARTERER's use, employment, possession, control, charter, operation, navigation, manning, maintenance, management, and work of the VESSEL.  Accordingly, CHARTERER agrees to fully protect, defend, hold harmless and indemnify (including reimbursement of attorney's fees and costs) OWNERS and the VESSEL from and against any and all claims, demands, causes of action . . . liabilities, judgments, liens, [and] losses . . . arising out of or in any way connected with or in consequence to CHARTERER's use, employment, [or] operation" of the BELLA Vessel.

36.     As further detailed below, Unico Marine breached Clause 19 of the BELLA Agreement by permitting liens to accrue against the BELLA Vessel, which liens have been paid by JMB 205.   Unico Marine further breached Clause 15 of the BELLA Agreement by failing to defend, hold harmless, and indemnify JMB 205 against those claims, liens, and liabilities.  JMB Shipping has incurred damages in the present amount of $656,372.01 as a result of liens incurred against the BELLA Vessel by Unico Marine.

37.     In addition, Clause 20 of the BELLA Agreement provides that "[i]f CHARTERER shall fail to pay any charter hire due for more than three (3) banking days after the due date thereof (subject to notice and cure period), or if CHARTERER shall fail to perform or comply with any other material provision of this AGREEMENT . . . OWNERS may retake possession of the VESSEL, wherever found, without prior demand and without legal process."

38.     As a result of Unico Marine's breaches of the BELLA Agreement, on or about October 7, 2021, JMB 205 caused the arrest of the BELLA Vessel pursuant to Admiralty Rule D in the Eastern District of New Orleans to retake possession of the BELLA Vessel.  Rather than surrender possession as required by Clause 20, Unico Marine opposed JMB 205's effort to retake possession of the BELLA Vessel, resulting in a lengthy delay during which the BELLA Vessel remained under *custodia legis* in New Orleans, Louisiana.

39.     In addition, as a result of Unico Marine's breach of the BELLA Agreement, JMB 205 lost future charter hire for the months of November and December, 2021, while it sought substitute charter arrangements to mitigate its damages.   JMB 220 incurred damages of $637,817.00 for lost charter hire caused by Unico Marine's breaches.

40.     JMB 205 incurred attorney's fees and reasonable costs of mitigation in the amount of $106,419 as a result of Unico Marine's breach of the BELLA Agreement.

41.     In sum, taking into account a credit due to Unico Marine of $81,341 for fuel, lube oils, and spare parts and equipment onboard the BELLA Vessel at the time of JMB 205's retaking of possession, JMB 205's net damages arising out of Unico Marine's breach of the BELLA Agreement are in the present amount of $2,141,063.

**D. Unico Marine Wrongfully Incurred Liens On JMB Shipping's Vessels, and Forced JMB Shipping To Pay Unico Marine's Debts To Clear Those Liens.**

42.     While Unico Marine was operating the Vessels, it incurred substantial debts from at least four different creditors:  Glander International Bunkering, Ltd.  ("Glander"); E.N.  Bisso & Sons, Inc.  ("E.N.  Bisso"); Buck Kreihs Marine Repair, LLC ("Buck Kreihs"); and John W. Stone Oil ("John Stone").   Unico Marine has wrongfully and unlawfully refused to pay settle its debts with these creditors, thereby forcing JMB Shipping to either clear the liens on Unico's Marine's behalf, or risk losing its Vessels.

   *i.  **Glander.***

43.     On December 2, 2021, counsel for Glander advised JMB Shipping that Unico Marine owed $227,864.92 to Glander for fuel and lube oil provide to the BELLA.   Because the fuel and lube oil were delivered to JMB Shipping's vessel on the order of her charterer (Unico Marine), and because Unico Marine failed to provide notice to Glander that it lacked authority under the governing charter party to incur liens against the vessel, the delivery created a lien against the BELLA Vessel for the full value of the fuel and lube oil delivered.   JMB Shipping's counsel forwarded these invoices to Unico Marine's counsel on December 2, 2021, with a request that Unico extinguish the lien that was incurred in violation of the terms of the parties' contract to prevent Glander from arresting the BELLA Vessel and interfering with JMB Shipping's current charter of that vessel.   Unico Marine did not respond to this initial request.   *See id.*

44.     On December 7, 2021, after receiving another demand from Glander's counsel, JMB Shipping's counsel again requested that Unico Marine pay its invoices to avoid the arrest of JMB Shipping's vessel.

45.     Unico Marine responded to JMB Shipping that it has been regularly communicating with Glander's counsel, and that "[t]here are issues with regard to Glander's accounting and

allocation of payments made by Unico that need to be resolved, which we are working on presently."   Ex. 7, Declaration of A. Davis, dated December 23, 2021 ("Davis Decl.") ¶ 22. However, Glander's counsel revealed that the "issues with regard to Glander's accounting and allocation" were in fact attempts by Unico Marine to re-allocate moneys previously paid away from JMB Shipping's vessels, and to instead apply those payments to Unico Marine's vessel, the M/V TERESA, barge ACADIA (the "TERESA".   In other words Unico Marine was retroactively attempting to increase the exposure to maritime liens of JMB Shipping's vessels for the benefit of Unico Marine's vessel.

46.     The correspondence between Glander and Unico Marine, which Glander has shared with JMB Shipping's counsel, shows that Unico Marine had no intention of making any payment to extinguish the lien it had wrongfully incurred against JMB Shipping's vessels.   As Glander's counsel wrote: "We also understand that Unico won't, or at least isn't in the position to – including given claims against JMB – provide settlement on the BELLA, so, going back to JWB/Centerline counsel on that."   *Id.*   ¶ 23.

47.     JMB Shipping learned of additional emails that further revealed how Unico Marine was negotiating to pay Glander's lien claim primarily through the proceeds of the sale of the TERESA; specifically, Unico Marine proposed payment in two tranches: the first, of $150,000, to be paid within 1 business day of the parties' confirmed agreement; and "the second tranche will be paid from the proceeds of the escrow money paid by the buyer on the sale of the Teresa" with Unico Marine "provid[ing] an assignment to Glander International of $340,684.59 of the sale proceeds . . . ."   *Id.*   ¶ 24.

48.     As it appeared to JMB Shipping that Unico Marine had no intention of clearing liens on the BELLA Vessel, and was instead only working to pay off overdue debts on its own

vessel, JMB Shipping settled Glander's lien claim for $216,015.81 in order to prevent the arrest of the BELLA Vessel.   In exchange, Glander assigned to JMB Shipping its contractual claim against Unico in the sum of $272,749.98 in order for JMB Shipping to recover against Unico Marine.

### ii.  E.N.  Bisso.

49.     Similarly, on November 29, 2021, E.N.  Bisso, a local harbor tug operator, reached out regarding five outstanding invoices for services ordered by Unico Marine and delivered to the BELLA Vessel and MORENA Vessel.

50.     Unico Marine's counsel told JMB Shipping's counsel that the debt had been resolved.   However, E.N.  Bisso said that Unico Marine had established a payment plan for invoices outstanding for Unico Marine's own vessel, the TERESA, but had not responded to requests for payment of invoices it incurred against JMB Shipping's vessels.

51.     To avoid an arrest of the BELLA by E.N.  Bisso, JMB Shipping settled E.N. Bisso's invoices and obtained an assignment in the amount of $41,002.20.   It appears, as it did with the Glander debts, that Unico Marine is intentionally avoiding paying debts it incurred with respect to JMB Shipping's Vessels (which it knows JMB Shipping will be forced to pay to avoid the arrest of its vessels), while using what money it has to clear liens and claims against its own vessel.

### iii.  Buck Kreihs.

52.     On October 15, 2021, Buck Kreihs intervened in federal litigation between JMB 205 and Unico Marine in the U.S.  District Court for the Eastern District of Louisiana, Case No. 2:21-cv-1838 (E.D.  La.), to assert claims against Unico for $342,868.00.   As with Glander and E.N.  Bisso, Buck Kreihs's sought repayment for maintenance services ordered by Unico Marine

and delivered to the BELLA Vessel and MORENA Vessel.  *Id.*  As with Glander and E.N. Bisso, Buck Kreihs had not received any payment from Unico Marine.

53.     On or about October 25, 2021, Buck Kreihs arrested the BELLA Vessel.   On November 22, 2021, JMB Shipping settled Buck Kreihs's claim for $330,000.00 in exchange for release of the BELLA Vessel, as well as a for a full release of Buck Kreihs' lien.

   *iv.  John Stone.*

54.     On January 26, 2022, JMB Shipping settled another outstanding debt incurred by Unico Marine, this time for unpaid fuel and lube oil provided by John Stone to the MORENA Vessel in the amount of $69,354.

55.     The unpaid invoice was for marine gasoil and poly 6 lubricant delivered to the MORENA Vessel on September 16, 2021.   The invoice was due on October 26, 2021.   After months of attempting to settle the debt with Unico Marine, John Stone threatened JMB Shipping that it would arrest the MORENA Vessel if the invoice remained unpaid.   JMB Shipping verified John Stone's claim and, to avoid arrest of its vessel, paid the invoice for a full release of John Stone's claim against Unico Marine.

**E.  JMB Shipping Has Posted $14 Million In Security For Unico Marine's Claims In Pending Arbitration, Yet JMB Shipping Does Not Have Any Security For Its Own Claims.**

56.     On October 12, 2021, Unico Marine commenced arbitration under the Charter Agreements for the parties' claims about the three Vessels.   The arbitration panel formed on October 28, 2021, and was accepted by the parties' on December 2, 2021.

57.     The only action taken relative to the arbitrations since Unico Marine accepted the panel was consolidating the three arbitrations into a single matter.   This agreement was finalized and made known to the panel on December 14, 2021.   Notably, though, no briefing schedule has

been set, nor have any hearing dates been chosen, nor has there yet been any discussion of either briefing schedules or hearing dates.

58.     To obtain possession of its own vessels from Unico Marine pending arbitration, JMB Shipping was forced to post security of $14 million for Unico Marine's counterclaims.  Unico Marine remains the beneficiary of $14 million in cash security in a pair of escrow accounts funded by JMB Shipping—one for $5.6 million securing claims related to the BELLA Vessel, the other for $8.4 million securing claims related to the MORENA Vessel Unit.

59.     Upon information and belief, Unico Marine's claim amount reflects unrealistic and highly speculative projections of the profits Unico Marine believes it would have made over seven 6-month charter terms stretching into 2025.

60.     In contrast to the $14 million that JMB Shipping has posted for Unico Marine's benefit, Unico Marine has not posted any security for JMB Shipping's claims.

**F.  Unico Marine Is About To Sell Its Only Remaining Assets To An Unknown Alleged Third-Party Buyer.**

61.     On December 9, 2021, Glander filed an *in rem* action against Unico Marine's vessel, the TERESA, in the U.S.  District Court for the Eastern District of New York to recover $599,635.74 in maritime liens on the TERESA, plus cost and expenses.  *See Glander Int'l Bunkering, Inc. v. M/V TERESA (IMO 9175016)*, No. 1:21-cv-6830 (E.D.N.Y.).

62.     On December 16, 2021, JMB Shipping intervened to obtain security for its claims against Unico Marine for breach of the Charter Agreements.

63.     On December 16, 2020, E.N Bisso also intervened regarding maritime liens amounting to $36,288.30, plus cost and expenses.

64.     On December 16, 2020, the court issued a writ of attachment on behalf of JMB Shipping against the M/V TERESA and Barge ACADIA, Unico Marine's other vessel.   Upon information and belief, the TERESA and ACADIA are the only assets belonging to Unico Marine.

65.     Unico Marine moved to vacate the Attachment and on January 14, 2022, which the court granted on February 17, 2022.   The court also has allowed for the interlocutory sale of the TERESA and ACADIA to an alleged third-party purchaser for $3,350,000, with Glander's lien being the only claim on the proceeds at this time.

66.     Upon information and belief, on or about February 25, 2022, Unico Marine removed the TERESA from the Eastern District of New York, and relocated it to the Hudson River in the Southern District of New York.

**G. JMB Shipping Has Meritorious Claims Against Unico Marine That Are Likely To Succeed In Arbitration.**

      *i.   JMB Shipping has meritorious claims for breach of contract.*

67.     On or about May 5, and 12, 2021, respectively, JMB Shipping and Unico Marine executed a valid, enforceable, and binding contracts—the Charter Agreements—copies of which are annexed hereto as Exhibits 1, 4, and 5.

68.     JMB Shipping agreed to let Unico Marine charter the Vessels in full consideration for this contract.

69.     In exchange for JMB Shipping allowing Unico Marine charter the Vessels, Unico Marine agreed to pay JMB Shipping $9,500.00 per day for the RUBIA Vessel, $6,500.00 per day for the MORENA Vessel, and $8,600.00 per day for the MORENA Vessel, for the term of the Charter Agreements.

70.     JMB Shipping has performed all conditions precedent that it is required to perform under the Charter Agreements, namely conveying the Vessels to Unico Marine.

71.    In about October 2021, Unico Marine repudiated and materially and substantially breached the Charter Agreements. *See supra* ¶¶ 15-41.

72.    As a result of Unico Marine's breaches of the Charter Agreements, JMB Shipping has sustained general damages flowing directly from, and are the natural and probably consequences of, Unico Marine's breach.    These damages, which continue to accrue, include without limitation lost profits; increased expenses for preservation of the Vessels and maintenance of their remaining crew; berthage, provisions, and other expenses; costs for repairs and deferred maintenance arising during Unico Marine's charter; management costs; attorneys' fees and costs, and related losses and damages.[7]

> ### ii.    JMB Shipping has meritorious claims for trespass to chattels.

73.    At all relevant times JMB Shipping has been the lawful owner of the Vessels, with the right to repossess the Vessels free and clear from any liens incurred by Unico Marine.

---

[7]    If a tribunal ultimately determines that there is no contract, implied or express, that covers a certain subject matter of this dispute, or that there is a contract but it is not valid and enforceable, then JMB Shipping alleges in the alternative as to such subject matter that it is entitled to recover under the doctrine of unjust enrichment.

Unico Marine intentionally and wrongfully incurred multiple substantial liens on JMB Shipping's Vessels.    JMB Shipping, at its own expense, provided Unico Marine money in the form of clearing those leans on Unico Marine's behalf.    Unico Marine was enriched by virtue of JMB Shipping paying and clearing its outstanding debts to the aforementioned creditors, in an amount to proven at trial.    Unico Marine was aware and had knowledge that JMB Shipping was not providing the benefit gratuitously and that the benefit had a value exceeding $1,000,000.00. JMB Shipping has demanded that Unico Marine make restitution to JMB Shipping in the same amount that JMB Shipping advanced on Unico Marine's behalf, yet Unico Marine has refused to do so.    Unico Marine has accepted and retained this benefit inequitable and at JMB Shipping's expense.    JMB Shipping and Unico Marine had a sufficiently close relationship as to reasonably cause reliance by JMB Shipping and to reasonably induce it to clear the liens on its Vessels by paying Unico Marine's debts

74.     Unico Marine intentionally and improperly interfered with JMB Shipping's right to repossess and use the Vessels by refusing to surrender possession of the BELLA Vessel and the MORENA Vessel until on or about November 23, 2021.

75.     Unico Marine further intentionally and improperly interfered with JMB Shipping's right to repossess and use the Vessels by incurring multiple liens from various debtors, as described above, that caused the Vessels to be arrested and forced JMB Shipping to pay substantial sums of money to clear the liens to avoid permanently losing the Vessels.

76.     As a result of Unico Marine's trespass to the Vessels, JMB Shipping has sustained general damages flowing directly and proximately from Unico Marine's trespass.   These damages, which continue to accrue, include without limitation *custodia legis* expenses; liens on the Vessels; lost profits; increased expenses for preservation of the Vessels and maintenance of their remaining crew; berthage, provisions, and other expenses; costs for repairs and deferred maintenance arising during Unico Marine's charter; management costs; attorneys' fees and costs, and related losses and damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, JMB Shipping has not previously made an application for the relief requested herein.

**WHEREFORE**, JMB Shipping respectfully requests that this Court grant the following relief:

(a) Issue an *ex parte* Order of Attachment pursuant to CPLR 7502(c) and Article 62, as incorporated by Federal Rule of Civil Procedure 64, directing attachment of the M/V TERESA, barge ACADIA, and/or any other property of Unico Marine found within the Southern District of New York up to the amount of four million dollars

($4,000,000/00), including any interest, costs, fees and expenses, and ordering that all persons served with such Order of Attachment shall be and thereby are forbidden to make or suffer any sale, assignment or transfer of, or any interference with any such property, or pay over or otherwise dispose of any such debt, to any person other than the U.S. Marshals Service, except upon direction of the U.S. Marshals Service or pursuant to a court order, in the aforesaid sum of four million dollars; and

(b) Grant such other and further relief as the Court deems just and proper.


Dated:  New York, New York            Respectfully submitted,
        March 2, 2022


By:    */s/ Rachel Maimin*
      Rachel Maimin
      Christopher M.  Schafbuch
      **LOWENSTEIN SANDLER LLP**
      1251 Avenue of the Americas
      17th Floor
      New York, NY 10020
      Tel:  212.419.6962
      Fax:  973.597.2551
      rmaimin@lowenstein.com
      cschafbuch@lowenstein.com

      *Attorneys for Petitioners JMB Shipping*

## VERIFICATION

STATE OF NEW YORK                    )
COUNTY OF NEW YORK                :
SOUTHERN DISTRICT OF NEW YORK   )

I, VIKAS TANDON, hereby declare, under the penalty of perjury pursuant to 28 U.S.C. § 1746, that I am the President for Petitioners JMB Shipping ATB 284, LLC ("JMB 284"); JMB Shipping ATB 220, LLC ("JMB 220"); and JMB Shipping ATB 205, LLC ("JMB 205," and collectively with JMB 284 and JMB 220, "JMB Shipping" or "Petitioners") in this action, and I am authorized to make this Verification.   I have read the annexed Verified Petition, and its factual contents are true to my personal knowledge, except as to the matters alleged on information and belief, and as to those matters I believe them to be true.   The grounds for my belief as to all matters not stated upon my personal knowledge are my involvement as President in the operation of Petitioners' business, and my review of correspondence, court filings, and other documents either exchanged between Petitioners and Respondent or Respondent's creditors or related to the disputes between such parties, as described in the Verified Petition.

Dated: New York, New York
       March 1, 2022

Vikas Tandon